## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Carlie A. Craven,<br>     Plaintiff<br> vs.<br><br>Equifax Information Services LLC,<br>Experian Information Solutions, Inc.,<br>Trans Union, LLC, and<br>NRA Group LLC d/b/a/ National<br>Recovery Agency,<br>     Defendants | <br><br><br><br><br><br><br><br>FILED ELECTRONICALLY |

### PRELIMINARY STATEMENT

1. This action for damages is based on: Defendants' false reporting on Plaintiff's credit reports of a debt that had been paid by her insurance; Defendants' failures to follow reasonable procedures and failures to conduct reasonable investigations with respect to such information; Defendant NRA's unfair debt collection practices; and Defendant NRA's violations of the Telephone Consumer Protection Act.

### PARTIES

2. Plaintiff Carlie Craven is a natural person who resides in the city of Ormond Beach, State of Florida, formerly resided in the city of Scranton, State of Pennsylvania, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

3.     Defendant NRA Group LLC d/b/a National Recovery Agency ("NRA") does business in Pennsylvania, is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

4.     Defendant Equifax Information Services, LLC ("Equifax") is a credit bureau doing business in Pennsylvania and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

5.     Defendant Experian Information Solutions, Inc. ("Experian") is a credit bureau doing business in Pennsylvania and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

6.     Defendant Trans Union, LLC ("Trans Union") is a credit bureau doing business in Pennsylvania and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

## JURISDICTION AND VENUE

7.     Because this case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.; the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.; and the Telephone Consumer Protection Act, 47 U.S.C. § 227; jurisdiction of this Court arises under 28 U.S.C. § 1331.

8.     Venue is proper in this Court because a substantial part of the claim arose in Pennsylvania, and all Defendants "reside" in Pennsylvania, as that term is used in 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

9.    Plaintiff incurred a debt in Pennsylvania to Moses Taylor Hospital ("the debt").

10.    The alleged debt was primarily for personal, family or household purposes and was therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

11.    On or about September 3, 2010, Plaintiff's insurance company paid Moses Taylor Hospital for the debt.

12.    After Plaintiff's insurance company paid Moses Taylor Hospital for the debt, Plaintiff no longer had any obligation on the debt.

13.    Defendant NRA attempted to collect the debt.

14.    Defendant NRA reported the debt to Defendants Equifax, Experian, and Trans Union.

15.    Defendant NRA's reporting of the debt to one or more credit bureaus was an attempt to collect the debt.

16.    Any indication after September 2010 that Plaintiff still owed any amount on the debt was false.

17.    Plaintiff's May 27, 2011, Equifax credit report showed the debt, listed under NRA, with an unpaid balance of $1,189.

18.    Plaintiff's May 27, 2011, Experian credit report showed the debt, listed under NRA, with an unpaid balance of $1,189.

3

19.    Plaintiff's May 27, 2011, Trans Union credit report showed the debt, listed under NRA, with an unpaid balance of $1,189.

20.    In letters dated June 10, 2011, Plaintiff disputed the debt to Defendants Equifax, Experian, and Trans Union.

21.    In her June 2011 letters, Plaintiff explained, "This bill was paid by my insurance company in 2010."

22.    With each of her June 2011 letters, Plaintiff enclosed a copy of a letter from her insurance company explaining that the debt was paid, a copy of the cashed check used to pay the debt, and a copy of an Explanation of Review showing that the amount the insurance company paid was everything that the provider was allowed to charge.

23.    Equifax received Plaintiff's June 2011 dispute.

24.    Equifax notified NRA of Plaintiff's June 2011 dispute.

25.    In the alternative, Equifax failed to notify NRA of Plaintiff's June 2011 dispute.

26.    Equifax did not provide NRA with the documentation Plaintiff had provided to Equifax with her June 2011 dispute.

27.    Plaintiff received investigation results from Equifax dated June 23, 2011.

28.    Equifax's June 23, 2011, investigation results indicated that the NRA debt had been "verified."

4

29.     Equifax's June 23, 2011, investigation results indicated that the status of the debt as of 6/2011 was "unpaid."

30.     Equifax's June 23, 2011, investigation results indicated that the balance on the debt as of 6/2011 was $1,189.

31.     Experian received Plaintiff's June 2011 dispute.

32.     In a letter dated June 20, 2011, Experian indicated to Plaintiff that it refused to accept her documentation.

33.     Experian notified NRA of Plaintiff's June 2011 dispute.

34.     In the alternative, Experian failed to notify NRA of Plaintiff's June 2011 dispute.

35.     Experian did not provide NRA with the documentation Plaintiff had provided to Experian with her June 2011 dispute.

36.     Plaintiff received investigation results from Experian dated June 24, 2011.

37.     Experian's June 24, 2011, investigation results indicated that the NRA debt had been verified.

38.     Experian did not include as part of, or in addition to, its June 24, 2011, investigation results, a consumer report that showed the status of the NRA debt.

39.     Trans Union received Plaintiff's June 2011 dispute.

40.     Trans Union notified NRA of Plaintiff's June 2011 dispute.

5

41.     In the alternative, Trans Union failed to notify NRA of Plaintiff's June 2011 dispute.

42.     Trans Union did not provide NRA with the documentation Plaintiff had provided to Trans Union with her June 2011 dispute.

43.     Plaintiff received investigation results from Trans Union dated June 29, 2011.

44.     Trans Union's June 29, 2011, investigation results indicated that the NRA debt had been "verified."

45.     Trans Union's June 29, 2011, investigation results indicated that the "Pay Status" was "COLLECTION ACCOUNT."

46.     Trans Union's June 29, 2011, investigation results failed to indicate that the debt was paid.

47.     Trans Union's June 29, 2011, investigation results indicated that there was a past due balance of $1,189.

48.     In a letter dated July 13, 2011, Plaintiff again disputed the debt to Equifax, Experian, and Trans Union.

49.     In her July 2011 letter, Plaintiff explained that the debt "was paid to the original creditor by my insurance company on September 3, 2010."

50.     With her July 2011 letter, Plaintiff again enclosed a copy of a letter from her insurance company explaining that the debt was paid, a copy of the cashed check

used to pay the debt, and a copy of an Explanation of Review showing that the amount the insurance company paid was everything that the provider was allowed to charge.

51.    Equifax received Plaintiff's July 2011 dispute.

52.    Equifax notified NRA of Plaintiff's July 2011 dispute.

53.    In the alternative, Equifax failed to notify NRA of Plaintiff's July 2011 dispute.

54.    Equifax did not provide NRA with the documentation Plaintiff had provided to Equifax with her July 2011 dispute.

55.    Plaintiff received investigation results from Equifax on or before August 16, 2011 ("Equifax's second investigation results").

56.    Equifax's second investigation results indicated that the NRA debt had been "verified."

57.    Equifax's second investigation results indicated that the status of the debt as of 6/2011 was "unpaid."

58.    Equifax's second investigation results indicated that the balance on the debt as of 6/2011 was $1,189.

59.    Experian received Plaintiff's July 2011 dispute.

60.    Experian notified NRA of Plaintiff's July 2011 dispute.

61.     In the alternative, Experian failed to notify NRA of Plaintiff's July 2011 dispute.

62.     Experian did not provide NRA with the documentation Plaintiff had provided to Experian with her July 2011 dispute.

63.     Experian did not respond to Plaintiff's July 2011 dispute.

64.     Trans Union received Plaintiff's July 2011 dispute.

65.     Trans Union notified NRA of Plaintiff's July 2011 dispute.

66.     In the alternative, Trans Union failed to notify NRA of Plaintiff's July 2011 dispute.

67.     Trans Union did not provide NRA with the documentation Plaintiff had provided to Trans Union with her July 2011 dispute.

68.     In a letter to Plaintiff dated July 22, 2011, Trans Union stated, "We consider this dispute frivolous and we will not reinvestigate the item(s)" unless Plaintiff provided further documentation.

69.     Before Plaintiff could obtain further documentation, Plaintiff received another communication from Trans Union, dated July 26, 2011, which stated, "Our investigation of the dispute you recently submitted is now complete.  The results are listed below."

70.     Trans Union's July 26, 2011, investigation results indicated that the NRA debt had been "verified."

71.    Trans Union's July 26, 2011, investigation results indicated that the "Pay Status" was "COLLECTION ACCOUNT."

72.    Trans Union's July 26, 2011, investigation results failed to indicate that the debt was paid.

73.    Trans Union's July 26, 2011, investigation results indicated that there was a past due balance of $1,189.

74.    On or about September 27, 2011, Plaintiff obtained from the medical provider a copy of its record entitled "Account Detail Data."

75.    The provider's Account Detail Data record showed that after the provider received payment from the insurance company, the balance Plaintiff owed was zero.

76.    In October 2011, Plaintiff yet again disputed the debt to Equifax, Experian, and Trans Union.

77.    In her October 2011 letter, Plaintiff again explained that the debt "was paid to the original creditor by my insurance company on September 3, 2010."

78.    With her October 2011 letter, Plaintiff yet again enclosed a copy of a letter from her insurance company explaining that the debt was paid, a copy of the cashed check used to pay the debt, and a copy of an Explanation of Review showing that the amount the insurance company paid was everything that the provider was allowed to charge.

9

79.     With her October 2011 letter, Plaintiff for the first time enclosed a copy of the Account Detail Data record she had recently obtained from the provider, showing that after the provider received payment from the insurance company, the balance Plaintiff owed was zero.

80.     Equifax received Plaintiff's October 2011 dispute.

81.     Equifax notified NRA of Plaintiff's October 2011 dispute.

82.     In the alternative, Equifax failed to notify NRA of Plaintiff's October 2011 dispute.

83.     Equifax did not provide NRA with the documentation Plaintiff had provided to Equifax with her October 2011 dispute.

84.     Equifax did not respond to Plaintiff's October 2011 dispute.

85.     Experian received Plaintiff's October 2011 dispute.

86.     Plaintiff received two different letters dated October 26, 2011, from Experian.

87.     In one of Experian's letters dated October 26, 2011, Experian indicated to Plaintiff that it refused to accept her documentation.

88.     In the same letter referenced in the prior paragraph, Experian stated, "We are contacting the source of the information you questioned."

89.     In Experian's other letter dated October 26, 2011, Experian stated, "We will not be investigating your dispute . . . ."

10

90.     Experian did not notify Plaintiff that it had determined that Plaintiff's October 2011 dispute was frivolous or irrelevant.

91.     Experian notified NRA of Plaintiff's October 2011 dispute.

92.     In the alternative, Experian failed to notify NRA of Plaintiff's October 2011 dispute.

93.     Experian did not provide NRA with the documentation Plaintiff had provided to Experian with her October 2011 dispute.

94.     Plaintiff received investigation results from Experian dated October 27, 2011.

95.     Experian's October 27, 2011, investigation results indicated that the NRA debt had been verified.

96.     Experian did not include any consumer report as part of, or in addition to, its October 27, 2011, investigation results.

97.     Trans Union received Plaintiff's October 2011 dispute.

98.     Trans Union notified NRA of Plaintiff's October 2011 dispute.

99.     In the alternative, Trans Union failed to notify NRA of Plaintiff's October 2011 dispute.

100.   Trans Union did not provide NRA with the documentation Plaintiff had provided to Trans Union with her October 2011 dispute.

11

101.   Plaintiff received investigation results from Trans Union dated November 11, 2011.

102.   Trans Union's November 11, 2011, investigation results indicated that the NRA debt had been "verified."

103.   Trans Union's November 11, 2011, investigation results indicated that the "Pay Status" was "IN COLLECTION."

104.   Trans Union's November 11, 2011, investigation results failed to indicate that the debt was paid.

105.   Trans Union's November 11, 2011, investigation results indicated that there was a past due balance of $1,189.

106.   From September 2010 to the present, Plaintiff disputed to various consumer reporting agencies the inaccurate reporting of the NRA debt multiple times, including without limitation the disputes specified herein.

107.   Due to Defendants' respective failures to conduct reasonable investigations of Plaintiff's disputes, the NRA debt on Plaintiff's credit reports was not appropriately deleted or modified.

108.   On or about July 9, 2011, Bank of America denied Plaintiff's application for credit due at least in substantial part to the inaccurate NRA account on Plaintiff's Experian credit report.

109.   On or about July 10, 2011, Capital One denied Plaintiff's application for credit due at least in substantial part to the inaccurate NRA account on Plaintiff's Experian credit report.

110.   On or about July 11, 2011, Chase denied Plaintiff's application for credit due at least in substantial part to the inaccurate NRA account on Plaintiff's Equifax credit report.

111.   On or about July 13, 2011, Citibank denied Plaintiff's application for credit due at least in substantial part to the inaccurate NRA account on Plaintiff's Experian credit report.

112.   On or about December 19, 2011, Discover denied Plaintiff's application for credit due at least in substantial part to the inaccurate NRA account on Plaintiff's Trans Union credit report.

113.   On or about December 30, 2011, Citibank again denied Plaintiff's application for credit due at least in substantial part to the inaccurate NRA account on Plaintiff's Experian credit report.

114.   On or about January 10, 2012, Capital One denied Plaintiff's application for credit due at least in substantial part to the inaccurate NRA account on Plaintiff's Trans Union credit report.

115.   On or about January 12, 2012, Citibank yet again denied Plaintiff's application for credit due at least in substantial part to the inaccurate NRA account on Plaintiff's Experian credit report.

116.   NRA communicated with Plaintiff in connection with the collection of the alleged debt.

117.   Plaintiff has a cellular telephone number that she has had for multiple years.

118.   Plaintiff has only used this number as a cellular telephone number, and does not believe that it was ever ported from a wireline service.

119.   At all times relevant this phone number has been assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls.

120.   As a result of Defendants' actions and omissions, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses, detriment to her credit rating, and emotional distress.

## **TRIAL BY JURY**

121.   Plaintiff is entitled to and hereby requests a trial by jury.

## **CAUSES OF ACTION**

**COUNT I:**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. §§ 1681e(b) and 1681i**
**EQUIFAX, EXPERIAN, AND TRANS UNION**

14

122.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

123.   Defendants Equifax, Experian, and Trans Union willfully and/or negligently violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer reports.

124.   Defendants Equifax, Experian, and Trans Union willfully and/or negligently violated 15 U.S.C. § 1681i in multiple ways including without limitation by failing to conduct reasonable reinvestigations of Plaintiff's dispute(s) and by failing thereafter to appropriately delete or modify information in Plaintiff's file.

125.   As a result of Equifax's, Experian's, and Trans Union's violations of §§ 1681e(b) and 1681i, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses, detriment to her credit rating, and emotional distress.   Plaintiff is therefore entitled to recover actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

126.   Equifax's, Experian's, and Trans Union's actions and omissions were willful, rendering them liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

127.   Plaintiff is entitled to recover costs and attorney's fees from Defendants Equifax, Experian, and Trans Union pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II:
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681s-2(b)
## NRA

128.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

129.   Defendant NRA willfully and/or negligently violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or by failing to appropriately report the results of its investigations, and/or by failing to appropriately modify, delete, and/or block the information.

130.   As a result of NRA's violations of § 1681s-2(b), Plaintiff has suffered actual damages not limited to credit denials, out-of-pocket expenses, detriment to her credit rating, and emotional distress.  Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. §§ 1681n and 1681o.

131.   NRA's actions and omissions were willful, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

132.   Plaintiff is entitled to recover costs and attorney's fees from Defendant NRA pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III:
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(8), 1692e(10), 1692f, and 1692f(1)
## NRA

133.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

134.   Defendant NRA's foregoing actions and omissions in connection with its attempts to collect the alleged debt violated numerous and multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(8), 1692e(10), 1692f, and 1692f(1).

135.   As a result of NRA's violations of the FDCPA, Plaintiff has suffered actual damages not limited to credit denials, out-of-pocket expenses, detriment to her credit rating, and emotional distress.  Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. § 1692k.

136.   Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover from Defendant NRA $1,000 in statutory damages and reasonable attorney's fees and costs.

## COUNT IV:
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227(b)(3)
## NRA

137.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

138.   NRA called Plaintiff's cell phone number an unknown number of times.

139.   It is believed, and therefore averred, that all of the calls NRA placed to Plaintiff's cell phone number were placed after Plaintiff's insurance company had already paid the debt.

140.   The industry standard for collection calls is to use automated dialers. Thus, it is believed, and therefore averred, that the calls NRA made to Plaintiff's cell phone were made using either an automatic telephone dialing system, as that term is defined in 47 U.S.C. § 227(a)(1), or an artificial or prerecorded voice.

141.   These telephone calls were not made for "emergency purposes," as defined in 47 C.F.R. § 64.1200.

142.   These telephone calls were not made with the Plaintiffs' prior express consent.  The factual allegations in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.The FCC has stated that providing a creditor with a cellular telephone number "reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number *regarding the debt*." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, 23 FCC Rcd 559 at ¶ 9 (2008)(emphasis added).

143.   As all of the calls NRA placed to Plaintiff's cell phone number were placed after the debt was paid, the calls were not regarding any legitimate debt.

144.   As a result of NRA's conduct, Plaintiff is entitled to an award of $500.00 in statutory damages for each and every calls made by Defendant to Plaintiff's cellular telephone number.

## COUNT V:
## WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## NRA

145.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

146.   It is believed, and therefore averred, that the calls NRA placed to Plaintiff's cell phone number were made willfully and/or knowingly.

147.   As a result, Plaintiff is entitled to increased damages.

148.   For each willful violation, the court may, in its discretion, increase the amount of the award to an amount equal to, but no more than, $1,500.00 per call.

## WHEREFORE,

Plaintiff prays that judgment be entered against these Defendants for:

    a.) Plaintiff's actual damages;

    b.) Punitive and/or statutory damages pursuant to 15 U.S.C. § 1681n;

c.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

d.) Statutory damages against NRA pursuant to 15 U.S.C. § 1692k;

e.) Reasonable attorney's fees and costs against NRA pursuant to 15 U.S.C. § 1692k;

f.) Statutory damages against NRA of $500.00 for each and every call that NRA placed to Plaintiff's cellular telephone pursuant to 47 U.S.C. § 227(b)(3);

g.) Increased damages of $1,500.00 against NRA pursuant to 47 U.S.C § 227(b)(3) for each and every call that the Court finds was willfully and/or knowingly placed to Plaintiff's cellular telephone; and

h.) Such other and further relief as may be just and proper.

s/ Brett Freeman
Brett Freeman, Bar ID: PA 308834
Sabatini Law Firm, LLC
Attorney for Plaintiff
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Facsimile (570) 504-2769
Email: bfecf@bankruptcypa.com